UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VIRGINIA FOLEY, et al.,

                      Plaintiffs,

-against-

UNION DE BANQUES ARABES ET
FRANÇAISES,

                      Defendant.

**ORDER**

22-cv-1682 (ER)

On July 20, 2023, the Court granted in part and denied in part Union de Banques Arabes et Françaises' ("UBAF's") motion to dismiss Plaintiffs' claims. Doc. 26 ("the Opinion"). In relevant part, the Court held that it had personal jurisdiction over UBAF, including as to Plaintiffs' turnover claims. *Id.* at 18, 21. It also rejected UBAF's argument that the Court should not follow *Peterson v. Islamic Republic of Iran*, 876 F.3d 63 (2d Cir. 2017) (*Peterson II*), *vacated on other grounds sub nom. Bank Markazi v. Peterson*, 140 S. Ct. 813 (2020), which was the primary authority on which Plaintiffs relied to state their turnover claims. *Id.* at 21–24.

On September 1, 2023, the Court denied UBAF's motion for reconsideration on its premotion conference papers, as requested, and directed the parties to proceed to discovery, notwithstanding that UBAF had appealed the Opinion to the Second Circuit. Doc. 43 ("the September Order"). In determining that UBAF's appeal did not divest the Court of jurisdiction and require a stay of discovery because the Court had serious doubts about the propriety of UBAF's interlocutory appeal, the September Order stated in a footnote:

> UBAF also argues that the Opinion "effectively attaches property overseas and will require UBAF to bring it into New York" and is therefore an immediately appealable injunction. Doc. 42 at 2. The Opinion did not reach so far, however, as it only rejected UBAF's invitation to dismiss Plaintiffs' turnover claims based on *Peterson II*, and it expressly reserved judgment on

> the traditional FSIA analysis that must also be conducted before attachment
> occurs. Opinion at 24. UBAF's argument that the Opinion is an injunction
> is thus without merit.

*Id.* at 3 n.2.

Less than one week later, on September 7, 2023, UBAF sought clarification from the Court as to whether, in light of footnote 2 of the September Order, the Opinion had a restraining effect on UBAF's assets outside of New York such that UBAF could not comply with a "recently received . . . demand from a French bailiff, which obligates UBAF to turn over certain funds held for a Syrian financial institution." Doc. 44 at 1. On September 14, 2023, Plaintiffs moved for a temporary restraining order ("TRO") and CPLR 5222 Restraining Notice to forbid UBAF from: "(i) making or suffering any sale, assignment or transfer of, or interfering with, any property of Syria and its agencies, instrumentalities and alter egos (collectively the 'Sanctioned Syrian Entities'), and/or (ii) paying over or otherwise disposing of any debt owed to the Sanctioned Syrian Entities, pending a decision by this Court on Plaintiffs' turnover claims." Doc. 49 at 7.

UBAF opposed any restraint. Doc. 53. It argued that (1) the Court lacks jurisdiction over UBAF to serve a CPLR 5222 Restraining Notice or issue an injunction restraining extraterritorial assets; (2) the separate entity doctrine precludes issuance of any restraint; (3) no authority, including *Peterson II*, allows the Court to restrain the assets of non-debtors (because Plaintiffs' judgments are against Syria, not the Syrian financial institution that is the subject of the French proceedings) or order UBAF to transfer those assets to the United States in violation of U.S. sanctions laws; and (4) *Peterson II* will be overturned. *Id.*

The Court held an order to show cause hearing on October 24, 2023 concerning Plaintiffs' motion for a TRO and to restrain UBAF from transferring the funds to the Syrian financial institution. At that hearing, Plaintiffs represented that they no longer seek a TRO, only the CPLR

2

5222 Restraining Notice. UBAF represented at the hearing that, in order to issue the CPLR 5222 Restraining Notice, the Court would need to find that (1) it had personal jurisdiction over UBAF, (2) the separate entity rule did not bar the instant restraint, and (3) Plaintiffs would be able to attach and restrain a non-debtor's assets.

For the reasons that follow, the Court declines to issue the CPLR 5222 Restraining Notice at this time.

## DISCUSSION

First, UBAF's attempts to relitigate whether the Court has personal jurisdiction over it with respect to the turnover claims remain unsuccessful. *See* Doc. 53 at 12–18. The Court finds that it has personal jurisdiction over UBAF for the reasons set forth in the Opinion. *See* Doc. 26 at 18, 21–24.

Second, the Court finds that the separate entity rule prohibits the Court from issuing the requested CPLR 5222 Restraining Notice. The separate entity rule provides that, for purposes of post-judgment restraining notices, a bank's various branches will be treated as separate entities, such that a restraining notice served on the New York branch would not operate to restrain assets held in the bank's foreign branches. *See Motorola Credit Corp. v. Standard Chartered Bank*, 771 F.3d 160, 161 (2d Cir. 2014) (*per curiam*) (citing *Motorola Credit Corp. v. Standard Chartered Bank*, 21 N.E.3d 223, 230 (N.Y. 2014)). Plaintiffs argue that the separate entity rule does not apply here because UBAF does not have a separate branch in New York. Doc. 56 at 12. But the Second Circuit has rejected this precise argument, holding that the separate entity rule applies with equal force regardless of whether personal jurisdiction over the bank is based on a New York branch or merely a New York correspondent account (as here). *See Next Investments, LLC v. Bank of China*, 12 F.4th 119, 133 (2d Cir. 2021). Moreover, the rule applies regardless of

3

whether the CPLR 5222 Restraining Notice is signed and served by the judgment creditor's counsel, or whether it is issued by the Court. *See Nike, Inc. v. Wu*, No. 13-cv-8012 (CM), 2020 WL 257475, at *21–23 (S.D.N.Y. Jan. 17, 2020), *aff'd sub nom. Next Investments*, 12 F.4th at 132–33. Accordingly, even though the Court has specific personal jurisdiction over UBAF by virtue of its New York correspondent accounts, the separate entity rule prevents the Court from restraining UBAF's assets in its Paris branch.[1] *See Next Investments*, 12 F.4th at 132–33; *Motorola*, 771 F.3d at 161; *Motorola*, 21 N.E.3d at 220; *Nike, Inc.*, 2020 WL 257475, at *21–23.

Even if Plaintiffs overcame the separate entity rule, however, the Court would nonetheless be unable to grant the relief sought because Plaintiffs submitted no authority for the proposition that the Court would be able to restrain the Syrian financial institution's—a non-debtor's—assets under CPLR 5222. CPLR 5222 authorizes service of a restraining notice on any person "in the possession or custody of property in which [that person] knows or has reason to believe *the judgment debtor or obligor* has an interest" to prevent that person from, for one year or until the judgment is satisfied, disposing of any property "in which *the judgment debtor or obligor* is known or believed to have an interest." Here, Plaintiffs hold judgments against Syria and certain of its military branches. *See* Doc. 49 at 11–12. The funds at issue are "held for a Syrian financial institution." Doc. 44 at 1. Although Plaintiffs speculated at the October 24, 2023 hearing that the funds may be held by a state-owned bank and is therefore an agency, instrumentality, or alter ego of Syria, neither Plaintiffs nor UBAF have submitted any evidence to

---

[1] The Court's holding here with respect to the separate entity rule for purposes of a restraining notice does not alter its holding in the Opinion rejecting UBAF's argument that the separate entity rule necessitates dismissal of Plaintiffs' turnover claims in their entirety. If the Court were to direct UBAF to recall the assets to the United States pursuant to *Peterson II* and, upon conducting a traditional Foreign Sovereign Immunities Act analysis, find that those assets were not immune and were subject to execution, as it held in the Opinion, the separate entity rule would likely not be a bar to execution *at that time*, even though the separate entity rule *currently* operates to prevent a restraint on those assets while held abroad.

substantiate or refute such speculation. Based on the current record before the Court, it is just as likely that the "Syrian financial institution" is a private corporation with no affiliation to the Syrian government as it is likely that the Syrian financial institution is a state-owned bank. *See* Doc. 53 at 9–10 (noting that UBAF holds assets on behalf of 11 Syrian financial institutions, "some of which are privately owned, and some of which are government-owned," and most of which are blocked entities under U.S. law but no longer sanctioned under European law, but failing to specify whether the Syrian financial institution whose assets are the subject of the French bailiff's request is privately- or government-owned). If the Syrian financial institution is merely a privately owned entity with no affiliation to Syria or the Syrian military, that financial institution would not be Plaintiffs' "judgment debtor," and Plaintiffs have submitted no authority that CPLR 5222 would permit restraint of a non-debtor's assets.

Moreover, even if the Syrian financial institution whose assets are at issue here *is* state-owned, it is not clear that CPLR 5222 would allow the Court to reach those assets even then. Plaintiffs posit that the Terrorism Risk Insurance Act ("TRIA") (28 U.S.C. § 1610 note) allows Plaintiffs to reach the blocked assets of a sanctioned agency, instrumentality or alter ago of Syria, and a state-owned Syrian bank's assets would thus be reachable as one of Plaintiffs' judgment debtors. Doc. 49 at 23–24. But TRIA § 201(a) only applies to blocked assets, and the Syrian sanctions regime only blocks property and interests in property that are *in* the United States or in the possession or control of *any U.S. person*. *See* 31 C.F.R. § 542.201(a)(1), (2), (3) (emphasis added). The assets at issue here are in Paris and are held by a French bank and therefore satisfy neither definition of a blocked asset, meaning that TRIA cannot reach those assets. *See id.* Plaintiffs respond that UBAF transferred $2 billion in Syrian funds through its New York correspondent account, in violation of the U.S.'s Syrian sanctions regime, and that $2 billion

5

therefore became a "blocked asset" as soon as it entered the United States. Doc. 56 at 9–10. Plaintiffs further argued at the October 24 hearing that all transfers of that $2 billion in blocked assets are a nullity, and the $2 billion should therefore be legally considered as remaining in the United States. But, even if that were true and the Court were to adopt that legal fiction, based on the record before the Court at this time, the Court cannot conclude that the assets at issue here—those the Syrian financial institution has instituted proceedings in France to obtain—ever entered the United States or are otherwise part of the $2 billion in blocked assets. In such circumstance, TRIA would not allow Plaintiffs to reach this Syrian financial institution's assets, meaning that the Syrian financial institution is not one of Plaintiffs' "judgment debtors" within the meaning of CPLR 5222. Thus, in the absence of evidence that the assets Plaintiffs ask the Court to restrain are assets of their "judgment debtor," Plaintiffs cannot prove that CPLR 5222 allows such restraint. This constitutes an independent bar to the Court's issuance of a CPLR 5222 Restraining Notice.

## CONCLUSION

Accordingly, the Court will not issue any restraining notice upon UBAF at this time.

SO ORDERED.

Dated: October 25, 2023
       New York, New York

                                    Edgardo Ramos, U.S.D.J.