UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

VIRGINIA FOLEY, *et al.,*

                   Plaintiffs,

      *-against-*

UNION DE BANGQUES ARABES ET
FRANÇAISES,

                   Defendant.

**<u>OPINION & ORDER</u>**

22-cv-01682 (ER)

---

<u>Ramos, D.J.:</u>

Plaintiffs—thirty victims and family members of victims of acts of terrorism sponsored by the Syrian Arab Republic ("Syria"), all of whom have obtained final judgments against Syria for damages—bring this suit against Union de Banques Arabes et Françaises ("UBAF") for allegedly working with Syria to evade U.S. sanctions and thereby prevent Plaintiffs from executing on Syrian assets to satisfy their judgments. Doc. 1 ("Compl."). Plaintiffs brought claims for constructive and actual fraudulent conveyance under New York law (N.Y. Debt. & Cred. L. § 273-a and § 276, respectively), as well as for turnover under both New York (CPLR § 5225) and federal law (Terrorism Risk Insurance Act ("TRIA"), 28 U.S.C. § 1610 note). *Id.* Before the Court are: Plaintiffs' motion to compel UBAF to produce documents; UBAF's cross-motion for a protective order and for attorney's fees. Docs. 73, 79. For the reasons set forth below, Plaintiffs' motion to compel is DENIED, and UBAF's motions for a protective order and for attorneys' fees are DENIED.

## I.     BACKGROUND

### A.  Background

Familiarity with the facts underlying this action is assumed, and these facts are discussed in more detail in the Court's July 20, 2023 Opinion and Order ("the July 2023 Opinion") granting in part, and denying in part UBAF's motion to dismiss, Doc. 60. The

parties have commenced discovery based on the central allegation that UBAF—a French financial institution—knowingly and intentionally facilitated the transfer of "$2 billion in Syrian funds through its New York correspondent account, in violation of the United States' Syrian sanctions regime, and that [the] $2 billion therefore became a 'blocked asset' as soon as it entered the United States." Doc. 74 at 11. Accordingly, Plaintiffs request that UBAF "turn over any asset of Syria currently within its possession, up to the amount of Plaintiffs' judgements against Syria[,]" pursuant to CPRL Section 5225 and the TRIA, Doc. 1 ¶¶ 3, 6 ("Compl."). The parties dispute both Plaintiffs' interpretation of the TRIA and Plaintiffs' requests. Docs. 66-1; 73.

   *1.  Challenged Documents*

   Plaintiffs challenge UBAF's responses to three sets of documents (the "Requests"). First, Plaintiffs seek documents providing information relating to bank accounts and payments to or from accounts belonging to Syria or the Syrian Sanctioned Entities[1], in response to requests 1–3, 5, 9–11 ("Accountholder Records").[2] Doc. 74 at 12, 13. Plaintiffs also seek documents relating to the investigation and subsequent settlement of the U.S. Treasury agency, the Office of Foreign Assets Control ("OFAC") with UBAF, in response to requests 14–18 ("OFAC Records").[3] *Id.* Next, Plaintiffs seek

---

[1] A Syrian Sanctioned Entity is any Syrian agency, corporation, department, ministry, or other entity subject to the Office of Foreign Assets Control's Syrian Sanctions Regulations. Doc. 66-1.

[2] The Accountholder Records requests seek: account numbers, locations, and accountholders of accounts of Syria or the Syrian Sanctioned Entities; account numbers, locations, and accountholder information of accounts holding funds belonging to Syria or the Syrian Sanctioned entities or that have been used to pay Syria or the Syrian Sanctioned Entities; bank balance information of accounts of Syria or the Syrian Sanctioned Entities; documents identifying the assets, ownership, interests, and sources of revenue of Syria or the Syrian Sanctioned Entities; documents identifying the debts owed to Syria or the Syrian Sanctioned Entities; payments made by UBAF to Syria or the Syrian Sanctioned Entities; and payments made by UBAF on behalf of Syria or the Syrian Sanctioned Entities to other parties, respectively. Doc. 66-1 at 9–12.

[3] The OFAC Records requests seek documents relating to: UBAF's processing of internal transfers on behalf of Syria or the Syrian Sanctioned Entities; UBAF's letter of credit transactions involving the Syrian Sanctioned Entities; UBAF's trade finance transactions involving the Syrian Sanctioned Entities; documents and communications provided by UBAF to OFAC regarding the investigation; documents provided by UBAF to OFAC relating to UBAF's review of its own business lines that caused the termination of services to Syria or high-risk banks. *Id.*

documents regarding contracts, agreements, or transactions among and between UBAF and Syria or the Syrian Sanctioned Entities, in response to requests 7 and 13 ("Transaction Records").[4]  *Id.*  These requests, unless otherwise specified, cover the period from January 1, 2011 through the present.  *Id.* at 7.

  2.  *The French Blocking Statute and The Hague Evidence Convention*

  Some countries have passed so-called blocking statutes "to preclude disclosure of otherwise discoverable information and documentary evidence" in foreign litigation.  *Lyons v. Bell Asbestos Mines, Ltd.*, 119 F.R.D. 384, 388 (D.S.C. 1988).  "A blocking statute is a law passed by the foreign government imposing a penalty upon a national for complying with a foreign court's discovery request."  *Id.* (internal quotation marks omitted) (quoting *In re Anscheutz & Co., GMbH*, 754 F.2d 602, 614 (5th Cir. 1985), *cert. granted and judgment vacated*, 483 U.S. 1002, 107 (1987)).

  The French "Blocking Statute" is a French criminal statute that prescribes sanctions for a French national or corporation who engages in the discovery process of a foreign judicial system without using the procedures established under the Hague Evidence Convention.  *See* French Penal Code Law No. 80–538.  Violations could subject French nationals or corporations to imprisonment, fines, and civil damages.  *See* Doc. 81 ¶¶ 18, 30, 33, 50, 72.  According to UBAF, the French Blocking Statute is "both a means of protecting the client's privacy … and reinforcing confidence in the French banking system."  Doc. 81 ¶ 42.  Specifically, the Blocking Statute "prohibits banks from disclosing information relating to client accounts or payment instruments, such as account balances and transaction details, except under certain circumstances[.]"  *Id*.

  The Hague Evidence Convention, an international treaty that sets out procedures which signatory nations may use to facilitate discovery abroad (to which the United

---

[4] The Transaction Records requests seek:  transactions involving accounts held by UBAF in the U.S. involving assets of Syria or the Syrian Sanctioned Entities; and documents relating to contracts, agreements, or transactions between UBAF and Syria or the Syrian Sanctioned Entities.  *Id.*

States and France are both signatories), provides that a party may obtain discovery using either Letters Rogatory or Letters of Commission. *See Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters*, Mar. 18, 1970, 23 U.S.T. 2555, 1970 T.I.A.S. No. 7444, codified at 28 U.S.C. § 1781.

### 3. Procedural Background

The July 2023 Opinion dismissed Plaintiffs' first and second counts asserting claims for constructive and actual fraudulent conveyance, and declined to dismiss their third and fourth counts asserting claims for turnover pursuant to CPLR § 5225 and the TRIA, respectively. Doc. 26 at 24. In regard to the turnover claims, the Court found that "personal jurisdiction is proper over UBAF" because "[a]ll of Plaintiffs' claims arise from UBAF's use of New York correspondent accounts to transfer, in a manner to evade Syrian sanctions, funds allegedly used to support terrorist attacks that injured Plaintiffs," which is "sufficient." *Id.* at 18. And because it "has personal jurisdiction over UBAF," the Court held that "it therefore has jurisdiction to order [UBAF] to recall extraterritorial assets owned by Syria to New York, which in turn means the Court has jurisdiction over Plaintiffs' turnover claims." *Id.* at 24.

On July 24, 2023, UBAF moved for reconsideration of the July 2023 Opinion, or in the alternative, for the Court to stay the case pending the Second Circuit's decision in *Levin v. Bank of New York*, No. 22-624, Doc. 27. The Court granted the stay on August 10, 2023, and on September 1, 2023, after the Second Circuit dismissed the appeal in *Levin*, the Court ordered the parties to proceed to discovery. Doc. 43 at 4–5.

On September 7, 2023, UBAF filed a letter seeking clarification of the Court's July 2023 Opinion. Doc. 44 at 2. Specifically, whether it "effectively attached any Syrian property that UBAF holds abroad, and whether it requires UBAF to restrain such property[.]" *Id.* In the letter, UBAF informed the Court that it had "received a demand from a French bailiff, [obligating it] to turn over certain funds held for a Syrian financial institution by September 15[, 2023]." *Id.* at 1. In response, Plaintiffs moved for, among

4

other things, leave to file a restraint notice pursuant to CPLR § 5222 concerning the assets being held by UBAF; the Court granted Plaintiffs leave to file at a conference held on September 14, 2023. Docs. 46, 48–51.

On October 25, 2023 ("October 2023 Order"), the Court declined to issue the restraint notice, at the time, citing, *inter alia*, "the absence of evidence that the assets Plaintiffs ask the Court to restrain are assets of the judgment debtor." Doc. 60 at 6. Specifically, the Court held that "[b]ased on the current record before" it, "it is [equally] likely that "the 'Syrian financial institution' is a private corporation with no affiliation to the Syrian government" or "a state-owned bank," only the latter of which would be Plaintiffs' judgment debtor. *Id.* at 5. Additionally, regarding the alleged $2 billion in blocked assets, the Court held that "based on the record … at this time, [it] cannot conclude that [the alleged assets] … ever entered the United States," as required for Plaintiffs to be able to reach those assets under the TRIA. *Id.* at 5–6.

In December 2023, UBAF made an initial production ("December 2023 Production") to Plaintiffs, that included "a spreadsheet … that identified 11 accounts held by UBAF for 7 different pseudonymized accountholders, and included a column identifying: (a) each account as Governmental, Nongovernmental, or Unknown; (b) the currency of the funds held in each account; and (c) the approximate account balances rounded to the nearest 1,000 of the currency held in each account. UBAF subsequently produced a revised version of this chart adding assets held for another entity that Plaintiffs identified in their motion for a temporary restraining order as a "Syrian Sanctioned Entity," but was not identified as a Syrian national in UBAF's records." Doc. 80 ¶ 11.

On February 29, 2024, UBAF made a second production of 343 documents, "consisting primarily" of the documents that UBAF had previously produced to OFAC regarding the transactions underlying UBAF's settlement with OFAC. *Id.* These included "the same redacted and pseudonymized transaction records that OFAC had

received, and included a chart prepared by OFAC allowing Plaintiffs to match the base penalty amount in OFAC's Enforcement Release to the 127 transaction records included in UBAF's production." *Id.* ¶ 17.

On May 20, 2024, Plaintiffs requested a pre-motion conference for leave to file a motion to compel the Requests, which the Court granted on June 14, 2024. According to Plaintiffs, they seek discovery to "produce the information necessary to prove the elements" of their turnover claims, "as laid out by this Court," in the October 2023 Order, Doc. 74 at 11.

On June 19, 2024, Plaintiffs sent UBAF a letter offering to modify document requests 14–18, to exclude documents regarding UBAF's compliance program that had previously been produced to OFAC. Doc. 75-2. In response, on June 25, 2024, UBAF stated, among other things, that it "has reviewed the OFAC production and produced all documents regarding the transactions," and "[f]or the avoidance of doubt, neither unredacted transaction records nor a redaction key were produced to OFAC in connection with this matter." Doc. 75-3.

On June 28, 2024, Plaintiffs filed the instant motion to compel, Doc. 73, to which UBAF responded on July 12, 2024, with a memorandum titled, Reply Memorandum of Law in Opposition to Plaintiffs' Motion to Compel Discovery and *In Support of Cross-motion for Protective Order.* Doc. 79 (emphasis added). On July 19, 2024, Plaintiffs filed their reply memorandum of law, Doc. 82, on July 22, 2024, UBAF filed a memorandum titled, Reply Memorandum of Law in Support of Cross-motion for Protective Order, Doc. 84. On July 31, 2024, Plaintiffs filed a letter stating, *inter alia,* that the Court should strike UBAF's July 22, 2024 reply as an improper "sur-reply." Doc. 85. UBAF responded on August 8, 2024, Doc. 87.[5] On November 21, 2024 and

---

[5] UBAF's reply memorandum of law in support of a cross-motion for a protective order contains both arguments in response to Plaintiffs' reply memorandum in support of the motion to compel *and* in support of their cross-motion for a protective order and for attorneys' fees. Doc. 84. Plaintiffs correctly assert that

November 27, 2024, Plaintiffs and UBAF, respectively, filed letters with the Court providing supplemental authority. Docs. 88, 89.  Before the Court is Plaintiffs' motion compel, and UBAF's motions for a protective order and for attorneys' fees.  Docs. 73, 79, 84.

## II.    LEGAL STANDARD

### A.  26(b)(1)

Rule 26(b)(1) permits discovery into "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  When assessing proportionality, the court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Id.*  "Rule 26 limits discovery where requests are unreasonably cumulative or duplicative [or] . . . the discovery can be obtained from a more convenient, less burdensome, or less expensive source."  *Shiber v. Centerview Partners LLC*, No. 21-cv-3649 (ER), 2023 WL 3071554, at *2 (S.D.N.Y. Apr. 25, 2023) (citing Fed. R. Civ. P. 26(b)(2)(C)).  The scope of relevance under Rule 26 is broader than under the Federal Rules of Evidence.  "Relevance is . . . to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense."  *Mortgage Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, No. 15-cv-293 (LTS) (JCF), 2016 WL 3906712, at *3 (S.D.N.Y. July 14, 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see also Securities &*

---

UBAF's arguments therein responding to Plaintiffs' motion to compel constitutes an improper sur-reply, as UBAF did not request or receive the Court's leave to file it.  Therefore, the Court will not consider those arguments.  However, UBAF's reply arguments in support of its motion for a protective order are procedurally proper and may be considered.  Thus, the Court declines to strike the entirety of UBAF's reply, Doc. 84.

*Exchange Commission v. Rayat*, No. 21-cv-4777 (LJL), 2022 WL 1423300, at *2 (S.D.N.Y. May 5, 2022).

Federal district courts have broad discretion in deciding motions to compel. *See Grand Central Partnership, Inc. v. Cuomo*, 166 F.3d 473, 488 (2d Cir. 1999). The burden of demonstrating relevance is on the party seeking discovery. *Go New York Tours, Inc. v. Aurora Tourism Services, LLC*, No. 22-cv-10633 (DEH) (JW), 2023 WL 9111158, at *1 (S.D.N.Y. Dec. 20, 2023) (citing *Trilegiant Corp. v. Sitel Corp.*, 275 F.R.D. 428, 431 (S.D.N.Y. 2011)); *see also Republic of Turkey v. Christie's, Inc.*, 326 F.R.D. 394, 400 (S.D.N.Y. 2018) (citing *State Farm Mutual Automobile Insurance Co. v. Fayda*, No. 14-cv-9792 (WHP) (JCF), 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015) (confirming that the burden of demonstrating relevance remains on the party seeking discovery even after 2015 amendments to Rule 26), *aff'd*, 2016 WL 4530890 (S.D.N.Y. Mar. 24, 2016)). If a party objects to discovery requests, that party bears the burden of showing why discovery should be denied. *Financial Guaranty Insurance Co. v. Putnam Advisory Co., LLC*, 314 F.R.D. 85, 87 (S.D.N.Y. 2016). "General and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information." *Go New York Tours, Inc*, 2023 WL 9111158 at *1 (quoting *Trilegiant Corp.*, 275 F.R.D. at 431). Rather, the resisting party has the burden of showing "how, 'despite the broad and liberal construction afforded the federal discovery rules, each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive[.]'" *Putnam Advisory Co., LLC*, 314 F.R.D. at 88 (quoting *Sokol v. Wyeth, Inc.*, No. 7-cv-8442 (SHS) (KNF), 2008 WL 3166662, at *3 (S.D.N.Y. Aug. 4, 2008)).

**B. Rule 26(c)**

Rule 26(c)(1) provides that the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "This rule 'confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is

required.'" *U.S. Commodity Futures Trading Commission v. Parnon Energy, Inc.*, 593 F. App'x 32, 36 (2d Cir. 2014) (summary order) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).  "Rule 26(c) allows for the crafting of appropriate relief, including that the disclosure or discovery may be had only on specified terms and conditions." *Ambac Assurance Corp. v. Adelanto Public Utility Authority*, No. 9-cv-5087 (JFK), 2012 WL 1589597, at *3 (S.D.N.Y. May 7, 2012) (internal quotation marks and citation omitted).

"The party seeking a protective order bears the burden of establishing that good cause for the order exists." *Id.* at *5 (citing *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 (2d Cir. 2004)).  It must demonstrate a "particular need for protection," showing "specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Id.* (citation omitted).

## III.    Discussion

The parties dispute Plaintiffs' interpretation of the TRIA and the appropriate scope of Plaintiffs' document requests.  According to Plaintiffs, pursuant to the TRIA, UBAF is charged with the possession of any blocked assets that they currently or no longer hold.  Doc. 74 at 18, 19.  Plaintiffs assert that they are entitled to the requested discovery to prove their turnover claims pursuant to CPLR § 5225 and the TRIA.  *Id.*

The turnover claims in this case are governed by Federal Rule of Civil Procedure 69(a), New York CPLR § 5225(b), and TRIA § 201.  Pursuant to Rule 69(a), judgments are enforced through a writ of execution, and the laws of the state where the court is located govern execution procedures unless a federal law applies.  Fed. R. Civ. P. 69(a)(1).  In New York, CPLR § 5225(b) governs turnover proceedings.  *CSX Transportation, Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 468 (2d Cir. 2018) ("*CSX I*").  "Under CPLR § 5225(b), the judgment creditor must show that (1) the judgment

debtor has an interest in the property the creditor is targeting and (2) the judgment creditor is entitled to the property or has rights superior to the party possessing the property." *In re Terrorist Attacks on Sept. 11, 2001*, 657 F. Supp. 3d 311, 332–33 (S.D.N.Y. 2023) (citation omitted).

A judgment creditor seeking turnover pursuant to the TRIA will also have to satisfy the requirements of the TRIA § 201(a): (1) that the judgment creditor has obtained a judgment against a terrorist party, (2) on a claim based on an act of terrorism or an act for which a terrorist party is not immune under the Foreign Sovereign Immunities Act, 28 U.S.C. 1605(a)(7), which the creditor seeks to satisfy with the (3) blocked assets, (4) of that terrorist party or that terrorist party's agency or instrumentality, (5) to the extent of only the creditor's compensatory damages. TRIA § 201(a); *see also In re Terrorist Attacks on Sept. 11, 2001*, 657 F. Supp. 3d at 333.

### A. Plaintiffs' Interpretation of The TRIA

Plaintiffs base their motion to compel in large part on the theory that pursuant to the TRIA, UBAF can be charged with the possession of blocked assets that they no longer hold. Doc. 74 at 20. Specifically, Plaintiffs argue that "under the TRIA, UBAF is charged with possession of funds belonging to the Syrian Sanctioned Entities that became blocked assets once UBAF helped move them through New York and into accounts at UBAF in France," regardless of whether they [were] frozen or seized." *Id.* (quoting *Levinson v. Kuwait Finance House (Malaysia) Berhad*, 44 F.4th 91, 98 n.6 (2d Cir. 2022)). Going further, Plaintiffs argue that in addition to the blocked assets currently held, any subsequent transfers of those assets are "null and void" and thus, "UBAF is charged with possession of [them] as a matter of law," *i.e.*, the Court should consider subsequently transferred blocked assets to still be in UBAF's "possession." Docs. 74 at 20. In response, UBAF contends that the theory underlying Plaintiffs' motion to compel (1) was not alleged in the Complaint, (2) is not consistent with the Court's previous opinions, and (3) "does not exist at law." Doc. 79 at 17–21. The Court will not compel

discovery based on Plaintiffs' new legal theory because it was not alleged in the Complaint and is not consistent with Second Circuit authority or the Court's prior Opinions.

In their reply memorandum in support of the motion to compel, Plaintiffs' argue that their TRIA cause of action "was asserted in their complaint alongside the since dismissed fraudulent conveyance claims, and which this Court allowed to proceed towards summary judgment."[6] Doc. 82 at 7. However, while the Complaint alleges that the TRIA applies to blocked assets within UBAF's immediate control, it does not allege that it applies to funds subsequently transferred. *See* Doc. 1. Instead, any allegations suggesting that UBAF should be held responsible for blocked assets that had been transferred are in relation to the dismissed fraudulent conveyance claims. For example, in the Complaint, Plaintiffs include a Prayer for Relief requesting, *inter alia*, that the Court "[e]nter an order requiring UBAF to pay Plaintiffs monetary damages in the amount of Plaintiffs' judgments or the amount of the fraudulently conveyed funds if less . . . to the extent that the fraudulently transferred assets no longer exist or are no longer in UBAF's possession[.]" Request No. 2 at 30; 2; *see also* ¶¶ 92, 101 ("Alternatively, to the extent the assets fraudulently transferred no longer exist or are no longer in UBAF's possession, Plaintiffs are entitled to an order requiring UBAF to pay money damages to Plaintiffs in the amount of the judgments."). By contrast, the very same Prayer for Relief requests with respect to TRIA that the Court "enter an order directing UBAF to turn over any asset of Syria *currently within its possession,* up to the amount of Plaintiffs' judgments against Syria." Request No. 3 at 30 (emphasis added). The two requests for relief are separate and clearly distinguish Plaintiffs' fraudulent conveyance claims—that they assert can hold UBAF in possession of blocked assets that they no longer hold—and

---

[6] Plaintiffs also argue that their separate TRIA claim has "separate elements," from the dismissed fraudulent claims, but, as UBAF asserts, Plaintiffs do not identify cases law establishing or analyzing those "elements." Docs. 82 at 7; 84 at 7 n. 3.

Plaintiffs' turnover claims, that they assert charges UBAF only with "current[]" possession.  *Id.*

Moreover, in the July 2023 Opinion, the Court allowed Plaintiffs' CPLR § 5225 and TRIA claims to continue with the understanding that they applied to blocked assets within UBAF's immediate possession.  Specifically, the Court stated that "[u]nder [Plaintiffs' claims for turnover pursuant to CPLR § 5225 and the TRIA, they] ask the Court to enforce [their] judgments against Syria by issuing an order that directs UBAF to pay to Plaintiffs all rights, title, and interest that Syria has in any assets that *remain in UBAF's possession*, up to the amount of Plaintiffs' judgments."  Doc. 26  at 21 (citing ¶¶ 105, 112)(emphasis added).[7]

Accordingly, the Court declines, at this time, to compel discovery based on Plaintiffs new legal theory.[8]

### B.  Document Requests

#### 1.  *Accountholder Records – Requests 1–3, 5, 9–11*

The first set of challenged document requests include documents with information relating to bank accounts, and payments and transfers to or from accounts belonging to Syria or the Syrian Sanctioned Entities.  Doc. 74 at 12, 13.  To prevail on their state law turnover claims, Plaintiffs must establish that UBAF has property of, or holds a debt owed to, Syria or its agencies, instrumentalities, or alter egos, and that Plaintiffs' interest in the property as judgment creditors is superior to any interest of UBAF in the property.  *See* CPRL § 5225.

---

[7] In its October 2023 Order, the Court showed reluctance to accepting Plaintiffs' "legal fiction" that under the TRIA they could reach blocked assets that UBAF *currently holds* due to their having been transferred through its bank when all transfers are "null and void." Doc. 60 at 6.

[8] In their motion papers, Plaintiffs do not provide support for their new legal theory nor do they respond to UBAF's arguments in their opposition to the motion to compel.  *See* Docs. 66, 74, 79 at 18–27; *see* 82 at 7–11.  Instead, Plaintiffs insist that "UBAF [is] attempt[ing] to reargue the validity of Plaintiffs' TRIA turnover claim in opposition to Plaintiffs' discovery motion[,]" "which is inappropriate at this stage of litigation."  Doc. 82 at 8.

Plaintiffs must also satisfy the requirements of TRIA § 201(a) by showing that: (1) they have obtained a judgment against a terrorist party, (2) on a claim based on an act of terrorism or an act for which a terrorist party is not immune under 28 U.S.C. § 1605A or 28 U.S.C. § 1605(a)(7), which they seek to satisfy with the (3) blocked assets, (4) of that terrorist, terrorist party, or their agency or instrumentality, (5) to the extent of only their compensatory damages.

In the October 2023 Order, the Court declined to issue the requested restraint notice against UBAF because, *inter alia*, the Court could not identify if a 'Syrian financial institution' [was] a private corporation with no affiliation to the Syrian government" or "a state-owned bank," only the latter of which would be Plaintiffs' judgment debtor. Doc. 60 at 5. Further, the Court held that it could not ascertain, based on the information before it, if the alleged assets had entered the United States and were therefore blocked, pursuant to the TRIA. *Id.* at 5, 6. Plaintiffs assert that the Accountholder Records requests seek such evidence, and are relevant and proportional. Doc. 74 at 19, 20. Defendants object, arguing that they cannot turn over assets that they don't have, and that they have disclosed the documents relevant to those assets. Doc. 79 at 27.

The Court finds that Plaintiffs' requests are not proportional and thus do not justify directing UBAF to violate French law.

In addition to the December 2023 Production, UBAF has offered to stipulate as to whether each entity is: (1) owned directly or indirectly by the Syrian government; (2) designated under the OFAC issued Syrian Sanctions Regulations ("SSR"); or (3) appears on Plaintiffs' own list of "Syrian Sanctioned Entities." Doc 75-3 at 1. In total, according to UBAF, Plaintiffs' past production and proposed stipulations, "would permit Plaintiffs to move for turnover of at least 75% of the Syrian assets." Doc. 79 at 27. UBAF also offers to discuss stipulations regarding the identities of remaining 25%, *i.e.*, private entities. Doc. 80 at 7.

Plaintiffs object to UBAF's proposal, arguing that they should be able to "conduct their own investigation into whether the remaining accountholders fall within the definition of 'agency or instrumentality' under TRIA" rather than having to accept UBAF's definitions and being unable to collect against or confirm "nearly a quarter of the Syrian assets." Doc. 82 at 13. However, in its October 2023 Order, the Court provided guidance as to which private entities would not be considered Plaintiffs' judgment debtor. Doc. 60 at 5 ("if the Syrian financial institution is merely a privately owned entity with no affiliation to Syria or the Syrian military, that financial institution would not be Plaintiffs' "judgment debtor."). With this guidance, UBAF represents that they are willing to stipulate to the remaining 25% of Syrian asserts belonging to private entities that are not Plaintiffs' judgment debtors. The Court finds this sufficient and therefore Plaintiffs requests, which would require UBAF to violate French law, Doc. 81, would be disproportionate to their needs in the case.

Accordingly, Plaintiffs motion to compel documents responsive to requests 1–3, 5, 9–11 is Denied.

### 2. OFAC Records - Requests 14–18

The second set of challenged documents are "materials or communications provided by UBAF to OFAC, and all related communications, in connection with the investigation that resulted in the OFAC Enforcement Release." Doc. 74 at 24. According to Plaintiffs, the requests (1) "establish UBAF's role and knowledge in facilitating specific transactions that enabled SSEs to move funds in and out of the U.S., in violation of U.S. law" and (2) "show[] whether and when UBAF knew of its wrongdoing, and the amount of time it took to disclose that wrongdoing—issues relevant to determining whether UBAF has any potential defenses to turnover under the TRIA." *Id.* at 25. Defendants respond that they have produced the relevant records and that Plaintiffs' broader requests are not relevant under CPLR § 5225 and the TRIA. Docs. 79 at 28–30; 80 ¶ 17.

14

Plaintiffs concede that UBAF provided "a partial production" of the OFAC Records. Doc. 74 at 14. Specifically, on February 29, 2024, UBAF made a production of 343 documents, "consisting primarily" of the documents that UBAF had previously produced to OFAC regarding the transactions underlying UBAF's settlement with OFAC, which included "the same redacted and pseudonymized transaction records that OFAC had received, and included a chart prepared by OFAC allowing Plaintiffs to match the base penalty amount in OFAC's Enforcement Release to the 127 transaction records included in UBAF's production." Doc. 80 ¶ 17. Yet, Plaintiffs insist that UBAF is withholding documents "concerning or discussing the Syrian Sanctioned Entities' transfers, which were provided to OFAC." Doc. 74 at 16.

However, Plaintiffs' requests are not relevant to their remaining claims. *See* Doc. 74 at 11. Plaintiffs' arguments for why UBAF should produce the additional OFAC documents are based on the legal theory that the TRIA charges UBAF with possession of blocked assets no longer in their control. *See* Doc. 74 at 24, 25. For example, Plaintiffs state that the OFAC Records requests seek to establish UBAF's role and knowledge in facilitating the unlawful fund transfers and to show when UBAF knew of its wrongdoing, neither of which are relevant to their remaining turnover claims. Doc. 74 at 25. However, under the existing CPLR § 5225 and TRIA claims, Plaintiffs need only identify whether the 'Syrian financial institution' is a private corporation with no affiliation to the Syrian government" or "a state-owned bank," and if the alleged blocked assets "ever entered the United States." Doc. 60 at 5–6.

Next, Plaintiffs insist that UBAF "refuses to produce to Plaintiffs documents that refer or relate to the specific transactions at issue that it previously produced to OFAC." Doc. 82 at 12. However, UBAF contends that "[it] has reviewed the OFAC production and produced all documents regarding the transactions underlying the settlement that were previously produced to OFAC." Doc. 79 at 29. Further, they contend that "the remaining production relates to other issues in OFAC's investigation, such as UBAF's

compliance program and contemporaneous understanding of U.S. sanctions laws, that have no bearing on Plaintiffs' turnover claims." *Id.*

Generally, "a party's good faith averment that the items sought simply do not exist, or are not in his possession, custody, or control, should resolve the issue of failure of production since one 'cannot be required to produce the impossible.'" *Zervos v. S. S. Sam Houston*, 79 F.R.D. 593, 595 (S.D.N.Y. 1978)) (citation omitted); *see also Menard v. Chrysler Group LLC*, No. 14-cv-6325 (VB), 2015 WL 5472724, at *1 (S.D.N.Y. July 2, 2015). Further, "[i]n the face of a denial by a party that it has possession, custody or control of documents, the discovering party must make an adequate showing to overcome this assertion." *Mason Tenders District Council of Greater New York v. Phase Construction Services, Inc*., 318 F.R.D. 28, 42 (S.D.N.Y. 2016) (quoting Golden Trade S.r.L. v. Lee Apparel Co., 143 F.R.D. 514, 525 n.7 (S.D.N.Y. 1992)). In other words, plaintiffs must cite to specific evidence to challenge Defendants' assertions that no additional responsive documents exist. *Mason Tenders*, 318 F.R.D. at 42; *see e.g*., *Margel v. E.G.L. Gem Lab Ltd*., No. 4-cv-1514 (PAC), 2008 WL 2224288, at *3 (S.D.N.Y. May 29, 2008) (noting that moving party did "not cite any specific evidence impugning [the non-movant's] assertions that their production [was] complete" and thus court could not find basis for misconduct). Here, Plaintiffs have not identified specific evidence to call into question Defendants' contention that no additional, relevant documents exist.[9]

Moreover, Plaintiffs request for "all documents and communications provided to [OFAC] relating to the investigation" is too broad. Doc. 66-1 at 11; *see United States v. Anthem, Inc.*, No. 20-cv-2593 (ALC) (KHP), 2024 WL 1116276, at *4 (S.D.N.Y. Mar. 13, 2024) ("[N]umerous courts have found that requests for 'all' documents produced in

---

[9] Plaintiffs assert that UBAF has an unproduced signed settlement agreement with OFAC about the transactions at issue. Doc. 82. at 12. UBAF responds that they have no objection to producing it, even though it had not been previously requested nor has its relevance been explained. Doc. 84 at 10 n.8.

another litigation, so-called 'clone' of 'copycat' discovery, are inherently overbroad requests requiring the Court to considerably scale back the information that a producing party must produce from another litigation or deny it entirely on the ground that a party must do its own work.").

Accordingly, Plaintiffs' motion to compel document requests 14–18 is DENIED.

### 3. Transaction Records – Requests 7 and 13

The third set of challenged requests include documents regarding transactions with Syria or the Syrian Sanctioned Entities through UBAF's New York correspondent account, and contracts, agreements, or transactions among and between UBAF and Syria or the Syrian Sanctioned Entities. Doc. 74 at 12, 13.

UBAF states that they have produced all records relating to this request, from 2011 to 2013, that were previously produced to OFAC, Doc. 79 at 28, and Plaintiffs do not provide sufficient justification for why that production is insufficient. Plaintiffs assertion that they require transaction records dating from 2011 to the present is denied because (1) it is based on Plaintiffs' new legal theory, and (2) records beyond 2013 are not relevant to their existing turnover claims.[10] Accordingly, document request 7, Plaintiffs motion to compel is DENIED.

Similar to requests 1, 3, 5, and 9, Plaintiffs concede that UBAF has produced documents "sufficient to identify, on an anonymized basis information related to" request 13. Doc. 74 at 13. However, Plaintiffs assert that "the information UBAF produced in response to [those requests] is so limited that the questions raised by the Court's [October 25, 2023] decision—the accountholders' identities and whether their accounts hold "blocked asset[s]," [Doc.] 60 at 5–6—cannot be answered." *Id.*

From the record, it is unclear what documents Plaintiffs seek to compel regarding document request 13, *i.e.*, while Plaintiffs indicate that UBAF has made some

---

[10] Plaintiffs do not dispute that UBAF ended its business relationship with its Syrian clients in 2013. Doc. 74 at 23; 79 at 28.

productions as to the request, they do not indicate how that production is deficient. Doc. 74 at 13. However, UBAF concedes that they have not produced "the additional records that Plaintiffs seek concern[ing] all transactions in and out of the Syrian entities' accounts on UBAF's own books in France[.]" Doc. 79 at 28. According to UBAF, these documents are not relevant because "these transaction records will [not] change what assets UBAF currently holds for Syrian entities, nor are they necessary for Plaintiffs to prove that any UBAF accountholder is an agency or instrumentality of Syria." *Id.* The Court agrees.

First, document request 13 is too broad and contains requests that are not relevant to their existing turnover claims. The request seeks "[a]ny and all documents and communications relating to . . . contracts, agreements, transactions . . ." between UBAF and Syria or any Syrian Sanctioned Entity. Doc. 66-1 at 11. However, as discussed, Plaintiffs' need only identify whether the 'Syrian financial institution' is a private corporation with no affiliation to the Syrian government" or "a state-owned bank," and if the alleged blocked assets "ever entered the United States." Doc. 60 at 5–6. Contracts or agreements between UBAF and Syria or any Syrian Sanctioned Entity are not needed for either inquiry.

Moreover, any relevance of the transaction documents is outweighed by UBAF's burden in producing them. First, UBAF states that "the underlying data used by UBAF to make the productions to OFAC currently exists only on backup drives located in France, which are not reasonably accessible." Doc. 80 ¶ 14. Further, they argue that "[i]t would be very difficult, costly, and burdensome to reactivate and restore the relevant data" for production. *Id.* Next, they assert that production of the transaction requests would require them to violate French Law. In response to the former, Plaintiffs assert that UBAF's explanation is insufficiently vague and too general. Doc. 82 at 14.

Under Federal Rule of Civil Procedure 26, a party must "conduct a diligent search" for requested electronic documents. *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006) (Francis, M.J.).

> A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost.

Fed. R. Civ. P. 26(b)(2)(B). "If that showing is made, the burden shifts to the requesting party to show good cause for the production of the not-reasonably-accessible [electronically stored information]." *Capitol Records, Inc. v. MP3tunes, LLC*, 261 F.R.D. 44, 51 (S.D.N.Y. 2009) (Mass, M.J.). "Information stored on backup tapes is generally considered 'not reasonably accessible.'" *Go v. Rockefeller University*, 280 F.R.D. 165, 175–76 (S.D.N.Y. 2012) (Pitman, M.J.) (citing *Quinby v. WestLB AG*, 245 F.R.D. 94, 99 (S.D.N.Y. 2006) (Pitman, M.J.)). Here, Plaintiffs have not shown good cause for the production of these transaction records, *i.e.*, any relevance of the documents is outweighed by the burden of production. This burden would only increase by forcing UBAF to violate French law. Doc. 81 ¶ 42 ("[The Blocking Statute] prohibits banks from disclosing information relating to client accounts or payment instruments, such as account balances and transaction details, except under certain circumstances[.]"). Thus, Plaintiffs motion to compel document request 13 is DENIED.

### C. UBAF's Request For a Protective Order and Attorneys' Fees

UBAF fashioned its response to Plaintiffs' motion to compel as a Memorandum of Law in Opposition to the Motion to Compel *and* In Support of a Cross-Motion for a Protective Order. Doc. 79. Plaintiffs' claim that UBAF's cross-motion should be denied because they failed to make any arguments for it in their cross motion, instead only doing so in their reply, where they state that "the standard for opposing a motion to compel and moving for a protective order are the same." Docs. 79, 84 at 6. However, because "a

protective order . . . is the flip side of a motion to compel," UBAF's arguments in opposition of the motion to compel are also in support of the cross-motion for a protective order.  *C.K. through P.K. v. McDonald*, 345 F.R.D. 262, 268 (E.D.N.Y. 2023), *aff'd*, 2024 WL 127967 (E.D.N.Y. Jan. 11, 2024); *see also id.* ("Parties seeking cover from discovery may avail themselves of a motion for a protective order which, in effect, is the flip side of a motion to compel.").

The Court retains "broad discretion . . . to decide when a protective order is appropriate and what degree of protection is required."  *U.S. Commodity Futures*, 593 F. App'x at 36 (quoting *Seattle Times*, 467 U.S. at 36).  UBAF asserts that that they are entitled to a protective order because Plaintiffs' motion to compel seeks discovery based on a "spurious and unsubstantiated legal theory" that they made "zero attempt to defend." Doc. 84 at 12.

However, Plaintiffs' motion is only partially based on Plaintiffs new legal theory pursuant to TRIA.  Plaintiffs also seek to compel production based on their turnover claims pursuant to CPLR § 5225, even if they were ultimately unsuccessful.  Moreover, the Court finds that UBAF's need for a protective order is unnecessary and its interests are sufficiently protected by the Court's Order.

Additionally, in their reply to the cross-motion for a protective order, UBAF requests attorneys' fees for the first time.  Doc. 84.  However, "[a]rguments may not be made for the first time in a reply brief."  *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993); *see also Wager v. G4S Secure Integration, LLC*, No. 19-cv-03547 (MKV) (KNF), 2021 WL 293076, at *1 (S.D.N.Y. Jan. 28, 2021).  In any event, the Court is disinclined to award attorneys' fees on this record.

Accordingly, UBAF's motions for a protective order and for attorneys' fees is DENIED.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiffs' motion to compel UBAF to produce documents response to requests 1–3, 5, 7, 9–11, 13–18 is DENIED.  Additionally, UBAF's motions for a protective order and attorney's fees are DENIED.

The parties are directed to appear for a conference on April 16, 2025, at 11:30 AM, in Courtroom 619 at the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York 10007.

The Clerk of Court is respectfully directed to terminate the motions, Docs. 73, 83.


It is SO ORDERED.


Dated:    March 31, 2025
   New York, New York

             _____
               EDGARDO RAMOS, U.S.D.J.