```
P4MBFOLC
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

VIRGINIA FOLEY, *et al*,

        Plaintiff,

    v.                                    22 Civ. 1682 (ER)

UNION DE BANQUES ARABES ET
FRANCAISES,

        Defendant.
                                          Conference
------------------------------x
                                            New York, N.Y.
                                            April 22, 2025
                                            10:30 a.m.

Before:

                      HON. EDGARDO RAMOS,

                                      District Judge

                        APPEARANCES

GIBSON, DUNN & CRUTCHER, LLP
     Attorneys for Plaintiff
BY: ROBERT L. WEIGEL
    JASON W. MYATT
    APRATIM VIDYARTHI

DAVIS POLK & WARDWELL, LLP
     Attorneys for Defendant
BY: BENJAMIN S. KAMINETZKY
    CAROLINE STERN

P4MBFOLC

1              (Case called)
2              MR. WEIGEL:  Robert Weigel, Gibson, Dunn & Crutcher
3    for the Plaintiffs Virginia Foley, *et al*.  With me is Jason
4    Myatt and Apratim Vidyarthi.
5              MR. KAMINETZKY:  Good morning, your Honor.  Benjamin
6    Kaminetzky of Davis Polk for UBAF.  I'm here with my colleague
7    Caroline Stern.
8              THE COURT:  Good morning to you all.  This matter is
9    on for a conference.  As the parties are aware, I recently
10   issued an opinion largely denying plaintiff's motion to compel
11   additional discovery.
12             So I wanted to bring you in to see procedurally where
13   we were, where we are with respect to discovery, and whether
14   the parties have talked about a plan going forward.  Mr.
15   Weigel.
16             MR. WEIGEL:  Yes, your Honor.  Because of the Jewish
17   holidays, we were not able to connect with Mr. Kaminetzky until
18   yesterday.  We did speak.  We think we're going to be able to
19   come to a stipulation in accordance with your Honor's opinion.
20   We believe that stipulation will allow us to move to turnover
21   the existing assets that are at the bank under the reasoning of
22   a case called *Peterson II* which the Second Circuit recently
23   reiterated in *Peterson IV*, which was namely that 1609 only
24   applies to assets in the United States giving immunity.
25             And therefore, under the Supreme Court's decision in

P4MBFOLC

1   *NML* and the *Koehler v. Bank of Bermuda* case which hold that
2   5225 has got a extraterritorial reach that we can have those
3   assets brought in here.  Once they're here, they will
4   definitely be blocked assets and we'll be able to get them
5   under TRIA.
6           We're having some discussions, which we may or may not
7   agree upon as to whether or not the assets that are currently
8   at the bank pass through the United States and became blocked
9   in that fashion.
10          THE COURT:  Currently at the bank in?
11          MR. WEIGEL:  France.  This case started, if your Honor
12  remember, there were a couple of billion of dollars of assets
13  that were moved through the United States.  And hundreds of
14  millions of dollars of those we can tell from the documents
15  that we do have, came through the United States and ended up at
16  UBAF.  We don't know which accounts they ended up in, but we
17  don't believe that's necessary for making a motion to CPLR 5225
18  to have it turned over.  And then once they're here, we are
19  entitled to them under TRIA.  We think that's probably the
20  simplest way to do it.
21          Without discovery, there's no way to trace whether the
22  assets that moved through the United States and ended up back
23  at UBAF are still the assets that are at the bank.  We need to
24  know which money went to which account, and then there's
25  tracing principles, but we don't think we need to do that

P4MBFOLC

1    exercise given the Second Circuit decision's in Peterson IV,
2    and your Honor's prior decision here, recognizing the wisdom of
3    the Peterson II decision.
4             THE COURT:  Okay.  So you are currently in talks with
5    the bank to see whether both sides can stipulate to information
6    or information concerning the owners of those accounts?
7             MR. WEIGEL:  Yes.  I believe based upon what your
8    Honor decided and what was previously offered that we are going
9    to be able to reach a stipulation that there's a chart, and
10   some have governmental.  That those that are listed as
11   governmental are owned in whole or in part by the Syrian
12   government, which would make them agencies or
13   instrumentalities.  I think there's been a little confusion
14   about -- they made the statement that that would allow us to
15   move for 75 percent of the assets.  We think it's actually a
16   higher percentage.  If you look at the ones that are
17   individuals, I think we did the math.
18            It's about $44 million that's on the chart that is
19   governmental, and about 800,000 that's individuals.  But
20   there's also another series of accounts that are not on this
21   chart which I believe are owned by governmental institution.  I
22   don't think they're going to stipulate that it's ████████
23   ████████, but I believe it is.  But it's acknowledged that
24   there's money there. I don't know how much that is.  That's not
25   been revealed to us yet.

P4MBFOLC

THE COURT:  Mr. Kaminetzky, anything you want to add?

MR. KAMINETZKY:  I agree with everything Mr. Weigel said in his first sentence that we're working on a stipulation that I hope would be able to facilitate Mr. Weigel being able then to move for turnover.

Again, it would be a factual stipulation as your Honor said about the ownership or the type of ownership of the accounts at issue.  Mr. Weigel then unfortunately went off the rails and started talking about Peterson IV, which, as Mr. Weigel should know, had nothing to do with -- that was a bespoke statute, Section 8772.  That was just for the Peterson case and just for those particular assets.  The Second Circuit never resolved the split between your Honor and Judge Oetken with respect to those continued viability of the Peterson II decision, but we don't have to discuss that now.

And then Mr. Weigel started talking about the assets that are no longer with the bank, that your Honor dismiss those claims, and then re-dismissed those claims in the discovery motion, so they're not relevant anymore.  But long story short, I really do think we're making progress.  And that at the end of the day what should happen next, and what we're trying to facilitate, it's kind of in a strange way, is that he'll get the facts he needs to move for turnover.  He'll move for turnover.  We'll object for the reasons that your Honor's already rejected.  Hopefully your Honor will see the light and

P4MBFOLC

reverse himself and come to the side of the angels.

If not, he'll get his turnover order, and then we'll be able to finally appeal this Peterson decision, whether or not assets abroad are immune from execution. So that's I think the way this is going to play out. It's been kind of this funny Kabuki dance in that we've been trying to get him to move for turnover.

He's been trying to avoid moving for turnover to revive the old claims, but I hope we're almost there. God forbid he'll get his turnover order when your Honor once again rejects our arguments. And then it will be, I think we'll all agree that it's a final order. We could appeal Peterson, and we'll see where we are. I think that's hoy this is going to play out.

THE COURT: Very exciting to see whether or not you get me to change my mind. And it's lovely and I'm not going to step in the way or get in the way of you folks trying to figure out the stipulation in the first instance. But let's for the sake of argument, that's why I brought you here, say that stipulation is not arrived at, what next? Will discovery go on or what, Mr.Weigel?

MR. WEIGEL: Well, I anticipate based upon's your Honor order that they will stipulate. As I read your Honor's order, a large part of it was based on the fact that we did not need the discovery because they would stipulate. I have no

P4MBFOLC

1    reason to think they're not going to stipulate.
2             If they don't stipulate, then we may have to come back
3    to you and say, your Honor, we need to learn some things here
4    and we'll come up with a very narrow request as to what we
5    actually need, but I don't anticipate that being the case.
6             I also just want to say, I find we're sort of in
7    agreement here which is sort of odd.  Your Honor was quite
8    clear about the assets that are not at the bank anymore, and
9    this stipulation is not involving that.  That's not what we're
10   talking about.  We're talking about assets that are currently
11   at UBAF in their possession, and as I understand it frozen
12   under European sanctions, and probably U.S. sanctions as well.
13            THE COURT:  Okay.
14            MR. KAMINETZKY:  I agree with that, your Honor.
15   Lawyers always get hung up on words.  We want the stipulation.
16   We want to kind of move on with our lives and get this issue to
17   the Second Circuit, so I'm optimistic.  We won't have to bother
18   you until Mr. Weigel can take the stipulation and move for
19   turnover.
20            THE COURT:  And the issue that you're concerned about
21   is whether I have jurisdiction to make you bring those funds
22   back?
23            MR. KAMINETZKY:  We believe that the law is clear, it
24   has been clear until the Second Circuit made a mistake and then
25   that was vacated by the Supreme Court that the exception to

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

P4MBFOLC

sovereign immunity only applies if the assets are in the United States.

We believe since these assets are outside of the United States, their categorically immune from executions. That's a purely legal issue, and there's a split among district courts in this district, and the Second Circuit will just have to sort it out.

THE COURT: Got it. Again, like I said, I don't want to step in the away of your stipulation, but I'm more comfortable having control dates.

MR. KAMINETZKY: I think that would be healthy, actually.

MR. WEIGEL: I think we're all in agreement on that, your Honor.

THE COURT: How long do you think you need either to enter stipulation and make your motion?

MR. WEIGEL: A week for the stipulation. We will be prepared to enter into the stipulation either this week or early next week. I don't know how long it's going to take UBAF to contact their client. Perhaps I can let Mr. Kaminetzky speak to that.

MR. KAMINETZKY: Does your Honor want to do a control date in a month with no promises. But once you have the stipulation, I assume you're going to then immediately move for turnover, Mr. Weigel. I'm not supposed to, but I assume I

P4MBFOLC

1   just -- whatever your Honor wants.
2           THE COURT: Why don't we say make your motion within
3   two months?
4           MR. WEIGEL: Sure, assuming we get the stipulation in
5   a month.
6           THE COURT: I'm adding some fat in there.
7   Mr. Kaminetzky, three weeks to respond?
8           MR. KAMINETZKY: Sure.
9           THE COURT: And one week to reply. So we'll get some
10  actual dates for you in just a moment from Ms. Trotman.
11          THE DEPUTY CLERK: The motion is due June 22nd. The
12  response is due July 14 and the reply July 21.
13          MR. KAMINETZKY: June 22nd?
14          MR. WEIGEL: Your Honor, could we possibly make that
15  July 1st for our motion. Mr. Myatt reminds me we're both
16  scheduled to be on vacation.
17          THE COURT: That's fine with me. July 1st.
18          THE DEPUTY CLERK: The response is due July 22.
19          MR. KAMINETZKY: Do you mind making it August 1 just
20  because I'm also away in July.
21          THE COURT: August 1st.
22          THE DEPUTY CLERK: And reply August 8.
23          THE COURT: Okay. Anything else that we should
24  discuss today, Mr.Weigel?
25          MR. WEIGEL: No, your Honor.

```
P4MBFOLC
```

1            THE COURT:  Mr. Kaminetzky.
2            MR. KAMINETZKY:  No, your Honor.  I appreciate your
3    time.
4            THE COURT:  We're adjourned.
5            (Adjourned)